1 | Melvin L. Felton (SBN 276047)
2 | mfelton@sandersroberts.com
  | Stephanie Jones-Nojima (SBN 178453)
3 | sjonesnojima@sandersroberts.com
  | **SANDERS ROBERTS LLP**
  | 1055 West 7th Street, Suite 3200
4 | Los Angeles, CA 90017
  | Telephone: (213) 426-5000
5 | Facsimile:  (213) 234-4581

6 | Attorneys for Plaintiff
  | **NEUTRON HOLDINGS, INC. DBA**
7 | **LIME**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUTRON HOLDINGS, INC DBA LIME, a Delaware Corporation<br><br>                Plaintiff,<br><br>     v.<br><br>HERTZ CORPORATION; a Delaware Corporation; CHARLIE FANG, an individual; KAI CONG, an individual.<br><br>                Defendants. | **CASE NO.**<br><br>**PLAINTIFF NEUTRON HOLDINGS, INC. DBA LIME'S COMPLAINT FOR: (1) VIOLATION OF DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 (c); (2) CONVERSION OF TRADE SECRETS; (3) CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (CAL. PENAL CODE § 502(C); (4) BREACH OF WRITTEN CONTRACTS; (5); INDUCING BREACH OF WRITTEN CONTRACTS; (6) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; (7) UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:     Hon.<br>Dept.:<br><br>Complaint Filed:<br>Trial Date: |

COMES NOW, Plaintiff NEUTRON HOLDINGS, INC d/b/a LIME. a Delaware Corporation, ("Plaintiff or "LIME"") alleging and complaining against Defendants HERTZ CORPORATION, a Delaware Corporation, ("Defendant" or "HERTZ"), an individual; CHARLIE FANG ("Defendant" of "Mr. Fang"), and individual, (collectively the "Defendants"), for the following causes of action:

**PARTIES**

1. Plaintiff Neutron Holdings, Inc. d/b/a. Lime ("LIME"), is, and at all relevant times herein was a Delaware corporation operating in San Francisco County, California.

2. Defendant The Hertz Corporation ("Hertz") is, and at all relevant times herein was a Delaware corporation operating in San Francisco County, California. While Hertz is traditionally a short-term automobile rental company, it has an existing partnership with Uber and fledgling rideshare technology and digital vehicle product development groups that are focused on, among other things, app development to allow renters to execute certain vehicle actions like starting the car or locking/unlocking it remotely and also focusing on electric vehicles.

3. LIME is further informed and believes that Hertz is increasingly focused on modernizing its fleet management technology by leveraging innovation of the type LIME has spent significant time and energy developing to become a leader in the ride share space.

4. Defendant Charlie Fang ("Fang") is, upon information and belief, and at all relevant times herein was, an individual residing in the county of San Francisco, California.

5. Defendant Kai Cong, is upon information and belief, an individual residing in Sammamish, Washington, who worked out of LIME's offices in San Francisco, California.

**JURISDICTION AND VENUE**

6. The Court has subject matter jurisdiction over the claims asserted herein

PLAINTIFF NEUTRON HOLDINGS, INC. DBA LIME'S COMPLAINT FOR DAMAGES

under 18 U.S.C. § 1836(c).  The Court has supplemental jurisdiction over the state law claims asserted herein because they are related to, arise from a common nucleus of operative facts as, and are part of the same case and controversy as LIME's federal claim alleged herein.

7. Venue is proper in this District under the provisions of 28 U.S.C. § 1391, because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district, the intellectual property that is the subject of this suit is situated in this judicial district.

8. This Court has personal jurisdiction over Defendant Hertz Corporation because Hertz has intentionally targeted customers in this judicial district and encouraged Defendant Charles Fang, a resident of this judicial district, to violate his valid non-solicitation agreement in this judicial district.  Hertz has thus directed its improper acts at parties located within this District.

9. This Court had personal jurisdiction over Defendant Charles Fang because LIME is informed and believes that Fang resides in this judicial district. Moreover, at all times relevant to this action Charles Fang knew that LIME carried out its business in San Francisco, California, and thus his decision to violate his non-solicitation agreements constitutes intentional acts aimed at parties located within this judicial District.

10. This Court had personal jurisdiction over Defendant Kai Cong because at all times relevant to this action Kai Cong knew that LIME carried out its business in San Francisco, California, and thus his decision to misappropriate LIME's trade secrets constitutes intentional acts aimed at parties located within this judicial District.

## INTRA-DISTRICT ASSIGNMENT

11. Because this action is an Intellectual Property Action within the meaning of Civil Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

///

///

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

# FACTS COMMON TO ALL CAUSES OF ACTION

**Lime's Invested Large Sums of Money Becoming a Leader in Rideshare and Fleet Management Technology**

12. LIME is the world's largest shared electric vehicle company and offers short term rentals of scooters and e-bikes in over thirty (30) countries. Given the extensive scope of its operations, LIME has spent vast sums of money building out its infrastructure and developing proprietary software and other protected trade secrets to support its operations and its innovation goals, including but not limited to fleet management technology and increasing efficiencies for its ridesharing platform. LIME's significant investments in building out its platform have allowed it to grow exponentially—it now rents in excess of 250,000 vehicles per day during peak season and 150,000 vehicles per day during other times.

13. LIME employs a staff of engineers to support its existing operations and innovation projects.

14. One of those engineers was Defendant Fang. Fang joined LIME on April 16, 2017, with the job title of Engineering Lead, as a member of the founding team before LIME launched its services.

15. Fang initially led the engineering teams working on core infrastructure, data pipelines, platform integrations, and fleet operations tooling, and was ultimately promoted to Head of Engineering, a C-Suite Level Position with over 50 direct and indirect reports. According to Fang's LinkedIn Profile, while serving as LIME's Head of engineering he "led LIME's software engineering, data, and IT orgs, which consists of software engineers, data scientists, and IT specialists across North America, Europe and China. And his "team buil[t] all the software that powers LIME's product and fleet operations, serving riders, operators and cities across the globe."

**Cong's Agreement to Protect LIME's Trade Secrets**

///

///

///

16. On or about December 9, 2016 LIME hired Kai Cong ("Cong") as the Head of Supply Engineering. Upon commencing his employment with LIME, Cong received a LIME employee handbook that included a Confidential Information Policy.

17. The employee handbook defines "Confidential Information" as "pieces of information, or a compilation of information, in any form (on paper, in an electronic file, or otherwise), related to the Lime's business that Lime has not made public or authorized to be made public, and that is not generally known to the public through proper means. For example, confidential or proprietary information includes, but is not limited to, nonpublic information regarding the Lime's business methods and plans, databases, systems, technology, intellectual property, know-how, marketing plans, business development, products, services, research, development, inventions, financial statements, financial projections, private personal information of other employees, financing methods, pricing strategies, customer sources, employee health/medical records, system designs, customer lists and methods of competing." The employee handbook further provides that "[u]pon termination of employment, all Lime property, including (but not limited to) Confidential Information, must be returned to Lime."

18. As such, the employee handbook put Cong on notice that LIME's Confidential Information is solely the property of LIME and was to be returned to LIME upon his termination.

**Fang's Agreements to Protect LIME's Confidential Information and Refrain From Poaching His Co-Workers**

19. On April 17, 2017 Fang signed a written employment agreement ("Employment Agreement".) The Employment Agreement identified Fang's job responsibilities as "among other things, develop and maintain software or hardware for backend services and mobile applications, help and work with other people in the company for general engineering tasks, and take on-call duties." A true and correct

copy of the April 17, 2017 Employment Agreement is attached hereto as Exhibit A, and all of its terms are incorporated by reference herein.

20. The Employment Agreement contains an obligation that Fang hold all LIME Confidential Information in a fiduciary and strictly confidential capacity. Under the Employment Agreement "Confidential Information" is defined to include "all nonpublic information concerning the business of the Company, including, without limitation, Company inventions, information relating to its products, services, operations, research, development, inventions, suppliers, clients, client lists, prospective client lists, employees, employee lists, compensation, pricing, trade secrets, patents, business methods, cost data, business plans, strategies, models, and all other information protected by the Uniform Trade Secrets Act or the California Uniform Trade Secrets Act."

21. The Employment Agreement further contains a restrictive covenant that provides in relevant part "…during [Fang's] employment and for a reasonable period of time thereafter, the Company has a legitimate interest in being protected against [Fang] using its intellectual property, confidential or proprietary information and trade secrets to solicit its employees…during [Fang's] employment and thereafter, [Fang] **will not directly or indirectly**…use any of the Company's Confidential Information…**to solicit or attempt to solicit…employees of the Company** which [Fang] did not know prior to being employed by the Company to terminate or reduce their relationship with Company in favor of a business relationship with another entity by which [Fang] is employed or otherwise affiliated…"

**Fang's Second Agreement to Refrain From Poaching His LIME Co-Workers**

22. Fang resigned from LIME on October 21, 2022 and that same month started a new position at Defendant Hertz, as SVP of Product Engineering. According to Fang's LinkedIn profile, he "currently lead[s] engineering at Hertz, an early pioneer of the transportation industry and one of the world's iconic brands."

23. The day Fang resigned he signed a Termination Certification, identifying Defendant Hertz Corporation as his new employer. In the Termination Certification Fang certified 1) he had returned all LIME property and information; 2) he would preserve as confidential all LIME Confidential Information; and 3) agreed that "for twelve (12) months from this date [until October 21, 2023] I will not directly or indirectly solicit any of [Lime's] employees to leave their employment at [Lime]. A true and correct copy of the October 21, 2022 Termination Certification is attached hereto as Exhibit B and incorporated by this reference.

**Lime Takes Significant Steps to Protect its Proprietary Data**

24. LIME takes significant steps to protect its confidential and proprietary information, including network security measures and company policies and procedures.

25. With respect to network security, LIME has implemented access controls for its proprietary data, including by requiring dual-factor authentication for employees who access corporate resources. LIME also requires that employees sign Employment Agreements agreeing not to disclose LIME confidential information and issues every employee a LIME employee handbook that reiterates Confidential Information must not be disclosed to third parties and must be returned to LIME upon termination.

**Fang Breaches His Non-Solicitation Agreements**

26. Immediately after Fang left LIME, LIME is informed and believes that Fang, in violation of his Employment Agreement and the Termination Certification, started both directly and indirectly recruiting other LIME employees that worked under him, through LinkedIn and by other methods. For example, Fang is connected to many other of his LIME team members on LinkedIn, including but not limited to Cong, and immediately upon starting his new position at Hertz, Fang started posting messages to his network recruiting for engineers to join his new team at Hertz.

///

27. LIME is informed and believes that FANG was intentionally targeting Cong and other of Fang's former LIME team members by his LinkedIn posts.

28. In December, 2022, less than two months after Fang left LIME, Cong gave notice and resigned, effective December 30, 2022. Cong resigned so that he could go work under Fang at Hertz. LIME is informed and believe that Cong was induced to leave LIME by Fang's improper direct and indirect recruiting efforts.

**Cong Misappropriates LIME's Confidential Information**

29. During his tenure at LIME, Cong was issued a company owned laptop. After Cong's departure, LIME learned that, between December 1, 2022 and his December 30, 2022 departure, Cong downloaded over 17,000 LIME files, many of those containing confidential and/or trade secret information that belonged to LIME. Upon examining Cong's company issued Apple laptop, LIME further learned that Cong had cloned his entire hard drive to a different Windows device, personally owned by Cong. As a result, LIME is informed and believes that Cong is still in possession of LIME Confidential and/or trade secret information and using that information to perform his work tasks at Hertz.

30. By way of example, the over 17,000 LIME documents downloaded by Cong included 112 confidential product roadmap design files, numerous confidential product roadmap summaries (including 2023 planning documents) and 156 confidential project post-mortem documents.

31. LIME is informed and believes that Cong's misappropriation of LIME's trade secrets and confidential information goes well beyond the specific examples of trade secrets identified herein, and will be demonstrated after LIME receives discovery in this action.

32. Cong's work responsibilities at LIME included work on technologies like fleet management and positioning, developing IOT interfaces, app refinement and development, and routing and planning logic.

33. LIME is informed and believes that Cong's position at Hertz is directly

competitive to the job functions he performed at LIME, as described by Cong on his LinkedIn profile "[r]ecent innovations such as smartphones, electric vehicles, and ride hailing apps have created new and exciting opportunities in transportation that Hertz is uniquely positioned to capitalize on.  We're looking for software engineers who will modernize Hertz's tech stack…"

34. Based on these representations, LIME is informed and believes that Cong exfiltrated LIME confidential and trade secret protected information for the purpose of using that information to help Hertz get a jump on modernization of its tech stack to streamline and make more efficient its tech stack and back-end fleet management processes.

**Fang Poaches Additional LIME Engineers to Join His Team at Hertz**

35. Around the same time Cong gave notice, another senior LIME employee who reported to Fang, Xiuming Chen ("Chen") also gave notice that he was resigning effective December 30, 2022 and announced he had accepted a position at Hertz as VP of Product Engineering.

36. Chen was LIME's Director of Engineering from May 16, 2018 to December 30, 2022, and directly reported to Fang from September 20, 2020 until Fang departed in October, 2022.

37. While at LIME, Chen was a key member of LIME's infrastructure team, and according to his LinkedIn profile, worked on infrastructure, security and partnership integrations.  In addition to working under Fang at LIME, Chen is connected to Fang on LinkedIn.

38. LIME is informed and believes that Chen was induced to leave LIME by Fang's improper direct and indirect recruiting efforts, through LinkedIn and by other means.

39. Shortly after joining Hertz, Cong also started openly recruiting other LIME engineers he's connected to on LinkedIn by positing the following solicitation: "I'm actively looking for senior staff software engineers or TLMs to work on critical

projects. These are some of the most exciting challenges I've seen so far. The initial members will play a crucial role in the teams we are building."

40. Two other LIME senior engineers that worked under Fang, Li Lei ("Lei") and Jianfeng Hu ("Hu") within the last month have also received employment offers from Hertz, which each has now accepted. LIME is informed and believes that Lei and Hu are connected to Fang on LinkedIn and were both indirectly and/or directly induced to interview at Hertz by Fang, through LinkedIn and by other methods.

**Hertz Fails to Stop Fang's Breaches of His Non-Solicitation Agreements**

41. LIME is informed and believes that Hertz, despite knowing that Fang has been soliciting other LIME employees to leave LIME and join Hertz, has done nothing to stop these violations of Fang's contractual obligations to LIME.

42. LIME sent a cease and desist letter to Fang on January 13, 2023, requesting that Fang immediately cease his improper solicitation of LIME employees.

43. Hertz responded to LIME's meet and confer letter on February 1, 2023, on behalf of itself and Fang. To date, neither Hertz nor Fang have agreed to a voluntary cessation of Fang's improper activities. Instead, Hertz has taken the position that Fang's non-solicitation agreements are not enforceable.

44. Fang's improper poaching of LIME's employees has significantly harmed LIME because it now faces staff shortages, recruiting costs, and critical project delays that it would not have had to face absent Fang's violations of his non-solicitation agreements and Hertz's turning a blind eye to those violations.

**FIRST CAUSE OF ACTION**

**(Against Defendant Kai Cong)**

**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(c)**

45. LIME incorporates all of the above paragraphs as though fully set forth herein.

///

46. The information Cong misappropriated constitutes protectable trade secrets owned by LIME, as set forth in 18 U.S.C. § 1839(3).

47. Based on an examination of the LIME materials downloaded by Cong, and on information and belief, he has misappropriated at least 112 confidential product roadmap design files, numerous confidential product roadmap summaries (including 2023 planning documents) and 156 confidential project post-mortem documents.

48. LIME is informed and believes Cong's theft of trade secrets goes well beyond the specific trade secrets identified here, and will be demonstrated after LIME receives discovery in this action.

49. LIME has taken reasonable measures to protect the confidentiality of its trade secrets, including through the measures alleged above. LIME does not and did not consent to the use of its trade secrets by anyone other than authorized LIME employees using them in the course and scope of their duties for LIME.

50. LIME's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

51. LIME is informed and believes Cong misappropriated LIME's trade secrets in the improper and unlawful manner alleged herein. Cong's misappropriation was intentional, knowing, willful, malicious, fraudulent, and oppressive. LIME is informed and believes that Cong has attempted and continues to attempt to conceal his misappropriation, as evidenced by his improper cloning of his LIME issued laptop.

52. LIME is informed and believes that if Cong is not enjoined, he will continue to misappropriate and use LIME's trade secrets for his own benefit and to LIME's detriment, and may disseminate those trade secrets to his new employer Hertz.

///

53.     As the direct and proximate result of Defendants' conduct, LIME has suffered and, if Cong's conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because LIME's remedy at law is inadequate, LIME seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its trade secrets and to protect other legitimate business interests. LIME's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

54.     An injunction is necessary to prevent Cong's actual and threatened misappropriation of LIME's trade secrets. LIME requests that the Court take affirmative steps to protect those trade secrets, including by ordering the surrender of all Cong's computers, USB drives, email accounts, cloud storage accounts and other sources and equipment, as well as any other of Cong's devices as are found to have contained any of LIME's trade secrets, for examination by a forensics expert to determine whether the trade secrets were wrongfully taken and/or disseminated to others, and to ensure that no LIME trade secrets remain saved on those systems; issuing a writ of possession, a preliminary injunction, and a permanent injunction ordering the return of the trade secret information and prohibiting Cong from continuing his unlawful actions; and ordering Cong to stand down from any further actions that could harm LIME's business through improper misappropriation or use of the trade secrets.

55.     In addition to equitable relief, LIME demands (i) monetary damages, (ii) exemplary damages in an amount two times the amount of its compensatory damages, pursuant to 18 U.S.C. § 1836(b)(3)(C) because Cong's misappropriation was willful and malicious, and (iii) attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) because Cong's misappropriation was willful and malicious.

///

///

## SECOND CAUSE OF ACTION

### (Against Defendant Kai Cong)

### Conversion of Trade Secrets

56. LIME incorporates all of the above paragraphs as though fully set forth herein.

57. The aforementioned conduct of Cong constitutes conversion of trade secrets. The conduct of Cong has harmed LIME by depriving LIME of the value of its investment in developing its trade secrets.

58. Cong has been unjustly enriched by virtue of his conduct as alleged herein.

59. As a direct and proximate result of the conduct of Defendants as alleged herein, Plaintiff has suffered damages to be proven at trial, together with reasonable attorney's fees and costs as provided for by law.

60. The alleged conduct of Cong in the improper taking of LIME's trade secrets and subsequent use thereof to the financial detriment to LIME and to the financial benefit to Cong, constitutes an intentional act and misuse of LIME's information, thereby entitling LIME to exemplary damages in a sum to be determined by the court.

## THIRD CAUSE OF ACTION

### (Against Defendant Kai Cong)

### California Computer Data Access And Fraud Act (Cal. Penal Code § 502(C))

61. LIME incorporates all of the above paragraphs as if fully set forth herein.

62. Defendant Cong violated California Penal Code § 502(c)(2) by knowingly, willfully, and without permission, accessing and making use of data and files from LIME's computers, websites, software, and/or computer networks.

///

///

///

63. Defendant Cong violated California Penal Code § 502(c)(2) by knowingly and willfully, and without permission, downloading to an unauthorized device and failing to return trade secrets and other confidential materials from LIME's computer systems that rightfully belong to LIME.

64. LIME is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e)(2).

65. Defendant Cong's actions have directly, proximately and irreparably harmed LIME by among other things, rendering LIME at risk of suffering competitive harm as result of unauthorized dissemination of its trade secrets and other confidential information to its competitors and other companies in the transportation space. Unless restrained or enjoined, Defendant Cong will continue to commit such acts. LIME's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling LIME to equitable remedies including injunctive relief.

## FOURTH CAUSE OF ACTION
### (Against Defendant Charles Fang)
### Breach of Written Contracts

66. LIME incorporates all of the above paragraphs as if fully set forth herein.

67. As alleged above, Fang and LIME entered into a written employment agreement on April 17, 2017.

68. Under the terms of the Employment Agreement, Fang agreed to indirectly or directly solicit LIME employees not known to him prior to starting work at LIME to follow Fang to a different employer in the event Fang resigned from LIME.

69. As alleged above, Fang and LIME entered into the Termination Certification on October 22, 2022. Under the terms of the Termination Certification, Fang agreed that he would not directly or indirectly solicit any LIME employees to leave LIME for a period of one year from the October 22, 2022 date of his termination.

///

70. LIME is informed and believes that Fang only became acquainted with Cong, Chen, Hu, and Lei because they all worked together at LIME.

71. LIME has fully performed all of its obligations under the Agreements, including paying Fang significant compensation and awarding him large equity grants.

72. Fang has breached and continues to breach his Employment Agreement and Termination Certification by soliciting and encouraging LIME employees to leave LIME and join Hertz to work on competing technology.

73. Fang's breaches of his agreements with LIME have caused foreseeable damage to LIME, including the loss of investment, and recruiting costs to replace the employees Fang improperly solicited. As a result, LIME is entitled to damages in an amount to be determined at trial.

74. As a result of any one of these breaches of its agreements, LIME has been injured and faces irreparable injury. LIME is threatened with losing investment and employees in amounts which may not be possible to determine, unless Fang is enjoined and restrained by order of this Court.

## FIFTH CAUSE OF ACTION
## (Against Defendant The Hertz Corporation)
### Inducing Breach of Written Contracts

75. LIME incorporates all of the above paragraphs as if fully set forth herein.

76. As alleged above, Fang's Employment Agreement and Termination Certification are valid and enforceable contracts between LIME and Fang.

77. LIME is informed and believes that Hertz knew Fang was subject to valid non-solicitation contracts before it extended Fang an offer to join Hertz.

///
///
///
///

78. LIME is informed and believes that Hertz intended Fang to breach his non-solicitation obligations so that it could capitalize on the institutional knowledge Fang's team members such as Cong, Chen, Lei and Hu possess about building the back-end infrastructure for ride-sharing and consumer facing apps so that it could gain a competitive advantage over other companies.

79. LIME is informed and believes that Hertz's desire to leverage this competitive advantage caused Fang to breach his agreements with LIME.

80. LIME was harmed by Hertz's conduct, in the form of the loss of investment and recruiting costs to replace the employees Fang improperly solicited, and Hertz was a substantial factor in that harm.

81. As a result of any one of these breaches of its agreements, LIME has been injured and faces irreparable injury. LIME is threatened with losing investment and employees in amounts which may not be possible to determine, unless Hertz is enjoined and restrained by order of this Court.

## SIXTH CAUSE OF ACTION

### (Against Defendants The Hertz Corporation and Charles Fang)

### Negligent Interference With Prospective Economic Relations

82. LIME incorporates all of the above paragraphs as if fully set forth herein.

83. LIME, Cong, Lei, Chen and Hu were in an economic relationship that would have resulted in a future economic benefit to LIME in the form of their continued work on important LIME engineering and fleet management projects.

84. Both Fang and Hertz knew of the relationship between LIME and Cong, Lei, Chen and Hu, and knew of its economic benefit to LIME.

85. Both Hertz and Fang knew or should have known that this relationship would be disrupted if they failed to act with reasonable care by allowing Fang to violate his non-solicitation agreements and recruit Cong, Lei, Chen, and Hu away from LIME so they could join Hertz.

86. Both Hertz and Fang failed to act with reasonable care by actually

soliciting and/or allowing the solicitation of Cong, Lei, Chen, and Hu by Fang and on behalf of Hertz.

87. Hertz and Fang's conduct was wrongful and such conduct was a substantial factor in harming LIME, in the form of the loss of investment and recruiting costs to replace the employees Fang improperly solicited, as well as resulting staff shortages and critical project delays.

88. As a result of Fang and Hertz's conduct, LIME has been injured and faces irreparable injury. LIME is threatened with losing investment and employees in amounts which may not be possible to determine, unless Hertz is enjoined and restrained by order of this Court.

## SEVENTH CAUSE OF ACTION

## (Against Defendants The Hertz Corporation, Kai Cong and Charles Fang)

## Unfair Competition

89. LIME incorporates all of the above paragraphs as if fully set forth herein.

90. The aforementioned conduct of Defendants, each of them, constitutes unfair competition. The conduct of Defendants has harmed LIME by depriving it of the value of its innovations and trade secrets and allowing the poaching of its employees in contravention of Fang's non-solicitation agreements.

91. Defendants, each of them, have been unjustly enriched by virtue of their conducts as alleged herein.

92. LIME is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants from engaging in the unfair competition alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against all Defendants on all causes of action as follows:

1. Judgment in favor of LIME and against Defendants on all of LIME's claims asserted in its Complaint;

2. That the Court grant LIME damages as described in each of the above claims, in favor of LIME and against Defendants in amounts to be determined at trial;

3. Establishment of a constructive trust ordering Defendant Cong to transfer legal title and possession to LIME of any devices containing LIME's trade secrets and other Confidential Information;

4. The issuance of a preliminary injunction and final, permanent injunction against Defendants as follows:

   a. That Defendants, and all those acting in concert with any of them, be preliminarily and permanently enjoined from disclosing or utilizing for any purpose LIME's Confidential Information;

   b. That Defendants, and all those acting in concert with any of them, be directed immediately to return to LIME any and all of LIME's Confidential Information in their possession, custody, or control; and

   c. That Defendants, and all of those acting in concert with any of them, be directed to refrain from directly or indirectly soliciting any LIME employees from leaving LIME to interview for a position at Hertz;

5. That the Court order Defendant Cong to deliver, or that LIME may seize, Cong's home and business computers (including laptops and desktops), memory devices, electronic data storage media, "cloud"-based file storage accounts and hardcopy documents to search, at Defendants' expense, for LIME's Confidential Information and other property belonging or relating to LIME and to arrange for the deletion of any and all such Confidential Information from those computers, media, devices and accounts;

6. That pending delivery to LIME of the materials described in the preceding

PLAINTIFF NEUTRON HOLDINGS, INC. DBA LIME'S COMPLAINT FOR DAMAGES

sub-paragraph, Defendant Cong be enjoined and restrained from destroying: (i) any electronic or hard copy document, file, record, information or other property containing any of LIME's Confidential Information; (ii) any electronic or hard copy document, file, record, information or other property referring or relating in any way to any of LIME's Confidential Information; and (iii) any data contained on any of his home and business computers (including laptops and desktops), memory devices, mobile telephones and other wireless communication devices, any other electronic data storage media and/or "cloud"-based storage accounts;

7. That Defendants identify, under oath, the identity of the individuals, groups and companies, if any, to whom Cong has disclosed LIME's Confidential Information;

8. That the Court grant LIME pre-judgment and post-judgment interest on all such damages;

9. That the Court grant LIME an award for reasonable attorneys' fees and costs of suit incurred herein;

10. That the Court grant LIME an award for punitive damages in amount to be determined at trial;

11. That the Court award LIME such other and further relief as the Court deems just and proper.

///
///
///
///
///
///
///

PLAINTIFF NEUTRON HOLDINGS, INC. DBA LIME'S COMPLAINT FOR DAMAGES

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), LIME hereby demands trial by jury of all issues properly triable thereby.

Dated:  March 2, 2023     **SANDERS ROBERTS LLP**

By: _____
Melvin L. Felton, Esq.
Stephanie Jones-Nojima, Esq.
Attorneys for Plaintiff
**NEUTRON HOLDINGS, INC. DBA LIME**