**McGuireWoods LLP**
Sabrina A. Beldner (SBN 221918)
Email: sbeldner@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

Attorneys for Defendant
THE HERTZ CORPORATION

**McGuireWoods LLP**
Meghaan C. Madriz (*admitted pro hac vice*)
Email: mmadriz@mcguirewoods.com
845 Texas Ave., 24th Floor
Houston, TX 77002
Telephone: 713.571.9191
Facsimile: 713.571.9652

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUTRON HOLDINGS, INC DBA LIME, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HERTZ CORPORATION, a Delaware Corporation; CHARLIE FANG, an individual; KAI CONG, an individual,<br><br>Defendants. | CASE NO. 3:23-cv-00934-JSC<br><br>**DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**(1)   NOTICE OF MOTION**<br><br>**(2)   MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed Under Separate Cover:*<br><br>**(3)  PROPOSED ORDER**<br><br>**Date:      Thursday, June 8, 2023**<br>**Time:      10:00 AM**<br>**Crtrm.:    8**<br>**Judge:    Hon. Jacqueline Scott Corley** |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................................... iii

NOTICE OF MOTION ............................................................................................ vi

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      SUMMARY ........................................................................................................ 1

II.     STATEMENT OF THE ISSUES .................................................................... 2

III.    RELEVANT FACTS FROM PLAINTIFF'S SECOND AMENDED COMPLAINT ........ 2

      A.    LIME'S "EXTENSIVE SCOPE" OF OPERATIONS AND BOUNDLESS, VARIED DEFINITIONS OF CONFIDENTIAL INFORMATION. ...................................................... 2

      B.    AGREEMENTS AND ALLEGATIONS RELATED TO CONG'S EMPLOYMENT WITH LIME. ............................................................................ 4

      C.    HERTZ'S LINKEDIN POSTS, APP UPDATES, AND HIRING DECISIONS—AND LIME'S FURTHER INFORMATION AND BELIEFS. ............................... 5

IV.    ARGUMENT & AUTHORITIES ................................................................... 6

      A.    LEGAL STANDARD. ......................................................................... 6

      B.    LIME FAILS TO SUFFICIENTLY ALLEGE ANY VIOLATION OF THE DTSA AGAINST HERTZ. ................................................................ 7

            1.    Lime fails to sufficiently identify the trade secrets at issue to support a DTSA claim. ................................................................ 8

            2.    Lime's reliance on "information and belief" cannot support its conclusory allegations of misappropriation against Hertz. ....................... 10

            3.    Lime's allegations of vicarious liability under the DTSA fail as Cong was not acting in "the course and scope of his employment with Hertz". ............................................................ 13

      C.    LIME'S DEFICIENTLY ALLEGED COMMON LAW CLAIMS ATTEMPT TO CIRCUMVENT CALIFORNIA PUBLIC POLICY AND LAW. ............................ 14

            1.    Lime fails to show Hertz's knowledge of the CIIA or allege any actionable conduct by Hertz to state a claim for inducing breach of contract or intentional interference with contractual relations. ............... 15

            2.    Lime fails to plead an independent, wrongful act—or any actionable conduct—by Hertz to support its intentional interference with prospective economic relations claims. ................................... 17

            3.    Lime fails to allege a duty owed by Hertz to assert a negligent interference with prospective economic relations claim. .......................... 18

i

1

D.   LIME FAILED TO PLEAD AN UNDERLYING, UNLAWFUL ACT AND, THUS, CANNOT
STATE A DERIVATIVE UNFAIR COMPETITION CLAIM. .............................................. 19

2

E.   PLAINTIFF MUST SEEK LEAVE TO AMEND, BUT LEAVE SHOULD BE DENIED
AS AMENDMENT WOULD BE FUTILE. ...................................................................... 19

3

4   V.   CONCLUSION ............................................................................................................. 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 7, 11

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) ............................................................................ 6

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    2018 WL 2298500 (N.D. Cal. May 21, 2018) .................................................. 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... 6, 7, 11

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F. Supp. 3d 1141 (S.D. Cal. 2014) ............................................................ 18

*Citcon USA, LLC v. MaplePay Inc.*,
    2021 WL 1238231 (N.D. Cal. Apr. 2, 2021), *reconsideration denied sub nom.*
    *Citcon USA, LLC v. Miao*, 2021 WL 4499267 (N.D. Cal. June 1, 2021) ........................ 10, 13

*CleanFish, LLC v. Sims*,
    2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ................................................. 9

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
    479 F.3d 1099 (9th Cir. 2007) ........................................................................ 17

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
    2020 WL 4937129 (E.D. Cal. Aug. 24, 2020) .................................................. 9

*Farm Credit Servs. v. Am. State Bank*,
    339 F.3d 764 (8th Cir. 2003) .................................................................. 7, 13

*Jobscience, Inc. v. CVPartners, Inc.*,
    2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ................................................... 10

*Krypt, Inc. v. Ropaar LLC*,
    2020 WL 6064423 (N.D. Cal. Oct. 14, 2020) .................................................. 17

*LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*,
    455 F. Supp. 3d 792 (N.D. Ind. 2020) ...................................................... 12, 13

*Navigation Holdings, LLC v. Molavi*,
    445 F. Supp. 3d 69 (N.D. Cal. 2020) .................................................... 7, 8, 11

*Original Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*,
    2022 WL 17224542 (C.D. Cal. Aug. 16, 2022) .............................................. 18

*Park-Kim v. Daikin Applied Americas, Inc.*,
   747 F. App'x 639 (9th Cir. 2019)................................................................ 19

*PhantomALERT, Inc. v. Google Inc.*,
   No. 15-CV-03986-JCS, Dkt. #35 (N.D. Cal. March 8, 2016)....................... 10

*Power Integrations, Inc. v. De Lara*,
   2020 WL 1467406 (S.D. Cal. Mar. 26, 2020)........................... 12, 15, 16

*Quintessential, LLC v. Quintessential Brands S.A.*,
   2022 WL 357502 (N.D. Cal. Feb. 7, 2022) ................................................. 12

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987)........................................................................ 19

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
   2004 WL 2496163, at *5 (N.D. Cal. Nov. 5, 2004) .................................... 19

*Space Data Corp. v. X*,
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ............................................... 7

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924 (N.D. Cal. 2015) ........................................................ 17

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................... 10

*Vendavo, Inc. v. Price f(x) AG*,
   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ........................................ 8, 10

*Yeiser Research & Dev. LLC v. Teknor Apex Co.*,
   281 F. Supp. 3d 1021 (S.D. Cal. 2017) ......................................................... 8

**State Cases**

*Cent. Valley Gen. Hosp. v. Smith*,
   162 Cal. App. 4th 501 (2008)...................................................................... 11

*Little v. Amber Hotel Co.*,
   202 Cal. App. 4th 280 (2011)................................................................ 15, 16

*Stolz v. Wong Commc'ns Ltd. P'ship*,
   25 Cal. App. 4th 1811 (1994)................................................................ 18, 19

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002).............................................................. 14, 15

**Federal Statutes**

18 U.S.C. § 1839 ................................................................................................ 7

iv

1

18 U.S.C. § 1839(5) ................................................................................................................ 10

2

**State Statutes**

3

Cal. Bus. & Prof. Code § 16600........................................................................................... 14

4

Cal. Bus. & Prof. Code § 17200........................................................................................... 19

5

**Rules**

6

Rule 8 ................................................................................................... 2, 6, 7, 11, 12

7

Rule 12(b)(6) ................................................................................................... 2, 6, 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

## NOTICE OF MOTION

**TO PLAINTIFF NEUTRON HOLDINGS, INC. DBA LIME AND ITS COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that, on Thursday, June 8, 2023, at 10:00 a.m., in Courtroom 8 of the United States District Court, Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant The Hertz Corporation ("Hertz" or "Defendant") will and hereby does move the Court to dismiss the claims asserted against Hertz in Plaintiff Neutron Holdings, Inc. d/b/a Lime's ("Plaintiff" or "Lime") Second Amended Complaint (Dkt. #16) pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") on the following grounds:

1. Lime fails to state a claim against Hertz under the Defend Trade Secrets Act ("DTSA") because Lime fails to sufficiently identify the trade secrets at issue, it relies on conclusory allegations of misappropriation based on "information and belief" which fail to satisfy the pleading requirements of Fed. R. Civ. P. 8 ("Rule 8"), and the only alleged acts of misappropriation pled were purportedly by Defendant Kai Cong ("Cong") while he was a Lime employee and not in the course and scope of his employment with Hertz to provide for vicarious liability; and

2. Lime's Fifth, Sixth, Seventh, and Eighth Causes of Action target Hertz's lawful recruiting and hiring of Lime's former employees in an attempt to circumvent void non-solicitation covenants and inhibit employee mobility in violation of CAL. BUS. & PROF. CODE § 16600 and California public policy; and

3. Lime's Fifth and Sixth Causes of Action for Inducing Breach of Written Contracts and Intentional Interference with Contractual Relations, respectively, should be dismissed because Lime fails to show Hertz's knowledge of the operative contract or allege any actionable conduct by Hertz to satisfy Lime's pleading obligations under Rule 8; and

4.    Lime's Seventh Cause of Action for Intentional Interference with Prospective Economic Relations should be dismissed because Lime fails to plead a requisite independent, wrongful act by Hertz; and

5.    Lime's Eighth Cause of Action for Negligent Interference with Economic Relations against Hertz fails as a matter of law because Lime does not—and cannot—show that Hertz, whom Lime alleges is its direct competitor, owes Lime any duty of care; and

6.    In light of the foregoing, Lime's Ninth Cause of Action for Unfair Competition should be dismissed as Lime fails to plead any underlying unlawful act by Hertz to form the basis of this derivative claim.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence, and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

DATED: April 25, 2023               **McGuireWoods LLP**


By:    _/s/ Sabrina A. Beldner_
           Sabrina A. Beldner, Esq.

Attorneys for Defendant
THE HERTZ CORPORATION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    SUMMARY

3

In its Second Amended Complaint (the "SAC") (Dkt. #16), Lime employs several creative
pleading methods in its unsuccessful attempt to craft a viable claim against Hertz. For example, with
no evidence of any trade secrets allegedly in Hertz's possession, Lime pleads abstract, open-ended
definitions of its confidential information—and states its intention to identify the trade secrets at
issue *after* discovery. Indeed, Lime's SAC asserts only scant factual allegations of innocuous actions
by Hertz, including out-of-context LinkedIn posts and interviews. What's more, Lime "pleads" the
requisite elements of its claims based ***solely*** "on information and belief" and baseless conclusions.
Further, given the red-lined changes between Lime's SAC and First Amended Complaint (Dkt. #16-
1), it is apparent that Lime now recognizes that public policy favors employee mobility, and non-
solicitation covenants (like the one Lime concededly required former named defendant Charles Fang
("Fang") to sign) are void and unenforceable as a matter of law in California. Undeterred, Lime ***still***
tries with its SAC to target the lawful recruiting and hiring of Lime employees through common law
tort claims for interference against Hertz. But, despite the artful pleading, Lime's claims against
Hertz in the SAC suffer obvious deficiencies and must be dismissed pursuant to Rule 12(b)(6).

17

First, Lime's claim against Hertz under the Defend Trade Secrets Act ("DTSA") fails to
sufficiently identify the trade secrets at issue and does not plead a claim for direct or indirect
misappropriation by Hertz. Further, Lime's allegations of vicarious liability are insupportable, as
Defendant Cong allegedly downloaded the information at issue while he was a Lime employee, and
not a Hertz employee. Next, Lime's claims of inducing breach of written contracts, intentional
interference with contractual relations, and intentional and negligent interference with prospective
economic relations are all contrary to California public policy to the extent they seek to limit lawful
employee mobility. Moreover, Lime fails to plead any "acts" or "conduct" by Hertz to provide
grounds for the inducing breach and intentional interference with contractual relations claims.
Similarly, Lime does not sufficiently plead an independent wrongful act as required to state a claim
for intentional interference with prospective economic relations. With respect to negligent
interference with prospective economic relations, Lime does not—and cannot—show that Hertz, its

1

alleged competitor, owed Lime a duty of care, which is required to state such a claim. Given the foregoing, Lime's derivative claim of unfair competition—which requires an unlawful act—likewise fails. Finally, given Lime's multiple attempts to assert claims in this matter, and continued failure to do so, leave to further amend should be denied as futile. Accordingly, Hertz respectfully requests that this Court grant the instant motion and dismiss Lime's claims asserted against Hertz with prejudice.

## II.    STATEMENT OF THE ISSUES

Whether Lime has sufficiently pled its claims against Hertz under Rule 8 to survive a Motion to Dismiss under Rule 12(b)(6) where:

- Lime fails to sufficiently identify the trade secrets at issue and does not allege an actionable instance of misappropriation by Hertz as required by the DTSA;

- Lime's California common law claims seek to limit employee mobility in violation of CAL. BUS. & PROF. CODE § 16600 and California public policy;

- Lime fails to plead supporting allegations to establish essential elements of its claims for inducing breach of written contracts, intentional interference with contractual relations, and intentional interference with prospective economic relations;

- Lime does not—and cannot—show that Hertz owed Lime a duty of care as required to assert a claim of negligent interference with prospective economic relations; and

- Lime fails to state an underlying cause of action to support Lime's derivative claim of statutory unfair competition.

Based on the foregoing, this Court must also decide if leave to amend the SAC should be granted where amendment of many—if not all—of Lime's claims would be futile under California and federal law.

## III.    RELEVANT FACTS FROM PLAINTIFF'S SECOND AMENDED COMPLAINT

### A.    LIME'S "EXTENSIVE SCOPE" OF OPERATIONS AND BOUNDLESS, VARIED DEFINITIONS OF CONFIDENTIAL INFORMATION.

Lime purports to be "the world's largest shared electric vehicle company" that also "offers short term rentals of scooters and e-bikes." (Dkt. #16 at ¶ 20.) "Given the extensive scope of its operations," Lime alleges that it "has spent vast sums of money . . . developing proprietary software and other protected trade secrets to support its operations and its innovation goals, including but not limited to fleet management technology and increasing efficiencies for its ridesharing platform." (*Id.*)

1   To protect such "confidential, proprietary and trade secret information," Lime asserts that it employs

2   a variety of processes and procedures, including—in relevant part—prohibitions related to disclosure

3   in its employment agreements and handbooks, labeling/marking confidential information as such,

4   and requiring the return of all Lime property upon termination. (*Id*. at ¶ 28.)

5       More specifically, Lime alleges its employee handbook contains a Confidential Information

6   Policy, which broadly defines "Confidential Information" as:

7       pieces of information, or a compilation of information, in any form (on paper, in an
        electronic file, or otherwise), related to the Lime's business that Lime has not made
8       public or authorized to be made public, and that is not generally known to the public
        through proper means. For example, confidential or proprietary information *includes,*
9       *but is not limited to*, nonpublic information regarding the Lime's business methods
        and plans, databases, systems, technology, intellectual property, know-how,
10      marketing plans, business development, products, services, research, development,
        inventions, financial statements, financial projections, private personal information of
11      other employees, financing methods, pricing strategies, customer sources, employee
        health/medical records, system designs, customer lists and methods of competing.

12  (*Id*. at ¶ 24 (emphasis added).) The Confidential Information Policy allegedly prohibits the disclosure

13  of Lime's Confidential Information outside of Lime without authorization. (*Id*. at ¶ 23.)

14

15      Lime purports to provide a varied definition of "Company Confidential Information" in its

16  Confidential Information and Invention Assignment Agreement ("CIIA"). (*Id*. at ¶ 26.) Referencing

17  Defendant Cong's CIIA, Lime states that its definition of "Company Confidential Information"

18  *includes*:

19      *any and all* non-public information that relates to the actual or anticipated business
        and/or products, research or development of the Company, or to the Company's
20      technical data, trade secrets, or know-how, *including, but not limited to*, research,
        product plans, or other information regarding the Company's products or services and
21      markets therefor, customer lists and customers (*including, but not limited to*,
        customers of the Company on which [Cong] called or with which [Cong] may become
22      acquainted during the term of [his] employment), software, developments, inventions,
        processes, formulas, technology, designs, drawings, engineering, hardware
23      configuration information, marketing, finances, and *other business information*
        disclosed by the Company either directly or indirectly in writing, orally or by
24      drawings or inspection of premises, parts, equipment, or other Company property.

25  (*Id*. (emphasis added).) The CIIA allegedly prohibits any unauthorized use or disclosure of

26  "Company Confidential Information" and requires the return of all Lime property including

27  Company Confidential Information. (*Id*.) Notably, despite being cited as the basis for Lime's claims,

28  neither the Confidential Information Policy nor Cong's CIIA are attached as exhibits to the SAC.

171463019.4

3

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1   **B.   AGREEMENTS AND ALLEGATIONS RELATED TO CONG'S EMPLOYMENT WITH LIME.**

2       Lime pleads that, to "support its existing operations and innovation projects," it employs a

3   staff of engineers—like Defendant Cong. (*Id*. at ¶¶ 23-26.) According to the SAC, on December 9,

4   2019, Lime hired Cong as its Head of Supply Engineering. (*Id*. at ¶ 22.) "As Lime's Head of Supply

5   Engineering, Cong managed teams of around 60 Lime engineers across the U.S., China, and Poland

6   and helped oversee and develop Lime's critical IP, including its IoT and fleet platform technology."

7   (*Id*.) Elsewhere, Lime alleges that "Cong's work responsibilities at Lime included work on

8   technologies like fleet management and positioning, developing IoT interfaces, app refinement and

9   development, and routing and planning logic." (*Id*. at ¶ 31.) Lime also asserts that Cong was subject

10  to the prohibitions and obligations set forth in Lime's employee handbook and CIIA regarding its

11  Confidential Information and Company Confidential Information, respectively—both of which are

12  conveniently ***not attached*** to the SAC. (*Id*. at ¶¶ 24-25.) On December 15, 2022, Cong gave notice

13  that he would be leaving Lime and joining Hertz—but Cong remained employed by Lime for some

14  time thereafter. (*Id*. at ¶ 32.) On December 20, 2022, Lime asserts that it emailed and directed Cong

15  to sign Lime's termination certificate, which Cong allegedly viewed but "chose not to sign." (*Id*. at

16  ¶ 33; *see also* Dkt. #16-1 at previous ¶¶ 23, 26, 69, 80.) Presumably, after reviewing the termination

17  certificate, which contained a patently unlawful employee non-solicitation provision, Cong opted not

18  to enter an agreement that he understood as an attempt to unlawfully restrict him and his future

19  employment endeavors.

20      During "his last month at Lime,"—that is, while he was a Lime employee—Lime alleges that

21  Cong downloaded over 17,000 Lime files that purportedly included "Lime trade secrets and other

22  confidential and/or proprietary information." (*Id*. at ¶ 32.) Lime further alleges that Cong was

23  "repeatedly syncing his personal Windows machine with Lime's Google Drive and, *on information*

24  *and belief*, downloaded these 17,000 Lime files . . . to his personal Windows machine." (*Id*. (emphasis

25  added).) Allegedly, Cong "refused to return these trade secrets and other confidential and/or

26  proprietary files before leaving and still has not returned them to date." (*Id*. at ¶ 33.) It is also alleged

27  that Cong's counsel admitted that Cong retained "one of Lime's prototype scooters and some other

28  undisclosed Lime materials." (*Id*. at ¶ 34.) Lime identifies expansive categories of trade secrets Cong

171463019.4

4

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

allegedly took, asserting that the files "include some of Lime's most sensitive intellectual property, *including but not limited to* confidential" designs, strategy, and roadmaps. (*See id*. at ¶ 35 (emphasis added).) Yet, Lime "is informed and believes" that Cong's downloading of information "goes *well beyond* the specific examples of trade secrets identified herein and will be demonstrated *after* Lime receives discovery in this action." (*Id*. at ¶ 36 (emphasis added).)

Lime further alleges that it "is *informed and believes* that Cong took Lime's trade secrets to use—and that he has used and is still using—Lime's trade secrets during and within the course and scope of his employment with Hertz to help Hertz modernize its tech stack." (*Id*. at ¶ 39 (emphasis added).) "Separately," before departing Lime, Lime alleges that Cong permanently deleted over 2,000 Lime files and applications from his Lime computer on December 31, 2022. (*Id*. at ¶¶ 40-42.) Although these purportedly deleted files are not alleged to contain trade secrets or confidential information, Lime nonetheless asserts that it "is *informed and believes* that Cong deleted these files to harm Lime." (*Id*. at ¶ 43 (emphasis added).)

### C.   HERTZ'S LINKEDIN POSTS, APP UPDATES, AND HIRING DECISIONS—AND LIME'S FURTHER INFORMATION AND BELIEFS.

Lime alleges Hertz "operates in the short-term-rental mobility industry" and "is increasingly focused on modernizing its fleet management technology by leveraging innovation of the type Lime has spent significant time and energy developing." (*Id*. at ¶ 10.) Lime conclusively asserts that Hertz "is looking to 'grow in new areas of the mobility sector' and on *information and belief* is using Lime's intellectual property to do so." (*Id*. at ¶ 11 (emphasis added).)

A careful read of the SAC reveals that Lime's speculative allegations against Hertz are expressly based *only* on "information and belief" and "[t]he timing of Hertz's announcements and release of the new version of its app." (*Id*. at ¶ 39.) To this end, Lime asserts that in October 2022, Hertz's SVP of Product Engineering posted on LinkedIn that Hertz was in the "early stages of building a team that will digitally transform Hertz and are looking for more builders." (*Id*. at ¶ 29.) Then, "[w]ithin weeks of Cong's downloading," Hertz launched a new version of its app that allowed users to "search in popular cities for cars and browse in Hertz locations." (*Id*. at ¶ 38.)  Lime also points out that in February 2023, Hertz publicly announced that it was planning to "diversify and

profitably grow in new areas of the mobility sector" based on "new investments in technology." (*Id.* at ¶ 38.) Lime additionally alleges that in February 2023, Cong posted on LinkedIn that "[r]ecent innovations such as smartphones, electric vehicles, and ride hailing apps have created new and exciting opportunities in transportation that Hertz is uniquely positioned to capitalize on. We're *looking* for software engineers who *will modernize* Hertz' tech stack." (*Id.* at ¶ 38 (emphasis added).) Notably, well before Cong's February 2023 LinkedIn post seeking engineers to modernize Hertz's tech stack, Hertz had ***already hired*** Xiuming Chen ("Chen"), Li Lei ("Lei"), and Jianfeng Hu ("Hu")—the former Lime employees that Lime attempts to allege were unlawfully recruited by Cong and Hertz in the SAC. (*Id.* at ¶ 44.) More specifically, Chen, who now serves as Hertz's VP of Product Engineering, was employed as Lime's Director of Engineering through December 30, 2022. (*Id.*)

Nonetheless, Lime asserts that "[t]hrough Cong's misappropriation, Hertz was *able to* unlawfully obtain (and *on information and belief* did unlawfully obtain) Lime's trade secrets." (*Id.* at ¶ 45 (emphasis added).) Lime also alleges—again only on "inform[ation] and belie[f]"—that Hertz used Lime's trade secrets and other confidential and/or proprietary information to improperly recruit and induce Lime's engineers to leave Lime. (*Id.* at ¶¶ 46-47.) Finally, Lime alleges that it "is *informed and believes* . . . that Cong continues to use Lime's trade secrets . . . during and within the course and scope of his employment with Hertz to help Hertz modernize its tech stack and poach Lime's engineers." (*Id.* at ¶ 48.)

## IV.    ARGUMENT & AUTHORITIES

### A.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory; or (2) the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a) requires a plaintiff to plead each claim in the complaint with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Thus, the Court is "free to ignore legal

conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (cit. omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. LIME FAILS TO SUFFICIENTLY ALLEGE ANY VIOLATION OF THE DTSA AGAINST HERTZ.

As an initial matter, it is unclear whether Lime is asserting a direct or indirect misappropriation claim against Hertz. "Courts distinguish between direct trade secret misappropriation claims and indirect trade secret misappropriation claims, depending on whether a plaintiff alleges that a defendant obtained the trade secrets directly from the plaintiff or indirectly 'from someone other than plaintiff.'" *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020). Here, while Lime first alleges that Hertz was able to unlawfully obtain Lime's trade secrets "[t]hrough Cong's misappropriation," Lime later asserts (baldly and with no supporting facts) that "separately . . . Hertz has engaged in actual or threatened misappropriation." (Dkt. #16 at ¶¶ 45, 55.) For this reason alone, Lime's DTSA claim should be dismissed for failure to provide fair notice of its claim, as required under Rule 8. *See Twombly*, 550 U.S. at 555.

Nonetheless, to assert a claim for direct misappropriation of trade secrets under the DTSA, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff. *See* 18 U.S.C. § 1839; *Space Data Corp. v. X*, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017). To state a claim for indirect trade secret misappropriation, a plaintiff must allege facts showing that the defendant: (1) knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it; or (2) knew or had reason to know it was a trade secret and that the disclosure was a mistake. *Navigation Holdings, LLC*, 445 F. Supp. 3d at 79.

As we discuss below, Lime fails to plead these essential elements of both a direct and indirect trade secret misappropriation claim against Hertz, and also fails to plead *any* factual allegations to support its claim. Thus, Lime's DTSA claim against Hertz must be dismissed. Additionally, Lime's assertion of vicarious liability by Hertz based on Cong's alleged actions likewise fails—as the only arguably supportable allegations of misappropriation by Cong did not occur in the course and scope of Cong's employment with Hertz, but rather while employed by Lime.

      **1.** ***Lime fails to sufficiently identify the trade secrets at issue to support a DTSA claim.***

To state a claim under the DTSA, Lime must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). "This pleading requirement . . . prevents a plaintiff from taking unfair advantage of the [DTSA,] and proceeding on a flimsy basis at the outset of a litigation only to tailor its identification of trade secrets to the discovery it receives." *See, e.g., Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1044 (S.D. Cal. 2017) (internal citations omitted) (dismissing a claim of trade secret misappropriation premised on "business strategy," "nebulous allegations of 'marketing ideas,'" or "sales sheets and data."). Here, Lime's descriptions of the allegedly misappropriated trade secrets are overly broad, non-exhaustive, and vague—making it impossible for Hertz to discern the boundaries of Lime's DTSA claim and thereby warranting dismissal of this claim.

First, to the extent Lime relies on the definitions of "Confidential Information" and "Company Confidential Information" found in the Lime Employee Handbook and the CIIA, such reliance is unavailing. (Dkt. #16 at ¶¶ 24, 26.) Specifically, both—notably inconsistent—definitions describe "in broad, categorical terms . . . the types of information that generally *may* qualify as protectable trade secrets," but fail to identify the "particular trade secrets [Lime] has a basis to believe actually were misappropriated here." *See Vendavo*, 2018 WL 1456697, at *4 (dismissing the plaintiff's trade secret claim under Rule 12(b)(6) because "the complaint's conclusory and generalized allegations are insufficient").

Next, throughout the SAC when referencing its Confidential Information and trade secrets, Lime uses iterations of the phrase "includes, but is not limited to." (Dkt. #16 at ¶¶ 20, 24, 26, 35, 45, 52.) Courts routinely find that such boundless allegations fail to sufficiently identify the trade secrets at issue and warrant dismissal. *See, e.g., CleanFish, LLC v. Sims*, 2020 WL 4732192, at *4 (N.D. Cal. Aug. 14, 2020) (finding plaintiff did not identify its trade secrets with the requisite particularity where the "[p]laintiff fail[ed] to place any limits on its alleged trade secrets by employing 'including but not limited to' language" because "it remains impossible to ascertain any 'boundaries within which the secret lies,' let alone conduct an 'item-by-item determination' of what is and is not protectable"); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *5 (E.D. Cal. Aug. 24, 2020) ("[A]s defendant points out, the complaint includes a non-exhaustive list of trade secrets; to the extent such a list sweeps in a raft of unspecified assets, it falls short of providing defendant the contours of the trade secrets claim); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (plaintiff's use of the phrases "such files included," "such as," "and other . . . products," and "include" left the allegations "ambiguous as to whether [the plaintiff's] claim is based on additional information" and resulted in dismissal of trade secret misappropriation claim).  Indeed, even where Lime does more specifically allege the trade secrets purportedly misappropriated by Cong, Lime impermissibly incorporates non-exhaustive phrases—such as "including"—to obscure any discernable boundaries with respect to the information at issue. (Dkt. #16 at ¶ 52.) With respect to Hertz, Lime's identification of the trade secrets at issue is particularly indiscernible, as Lime simply asserts—in conclusory fashion and based on nothing more than *information and belief*—that Hertz possesses and intends to use or disclose "*some of those* trade secrets, *including* those trade secrets identified in paragraph 51 [sic] of this Complaint." (Dkt. #16 at ¶ 55 (emphasis added).)

Finally, Lime expressly pleads that it has merely identified "examples of trade secrets" in the SAC and that it will demonstrate the breadth of trade secrets it claims to have been misappropriated "*after* Lime receives discovery." (Dkt. #16 at ¶¶ 36, 56 (emphasis added).) In other words, Lime has simply identified a few narrow and vague categories of information under its boundless, deficient definitions as a Trojan Horse, if you will, all of which are admittedly designed to get this Court to

allow Lime to use discovery to develop and later plead allegations. Such conduct is not ordinarily countenanced, nor should it be here. *See Jobscience, Inc. v. CVPartners, Inc.,* 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) (refusing to allow plaintiffs to rely on the "old trick of vague pleading with the blanks to be artfully filled in only after discovery").

Because Lime fails to sufficiently identify its trade secrets in the SAC as outlined above, the Court should dismiss Lime's DTSA claim against Hertz.

### 2. *Lime's reliance on "information and belief" cannot support its conclusory allegations of misappropriation against Hertz.*

Next, Lime fails to plead *any* factual support to show that Hertz had the requisite knowledge of Cong's alleged misappropriation of the information at issue—let alone that Hertz itself actually acquired, disclosed, or used Lime's trade secrets or confidential information. *See* 18 U.S.C. § 1839(5). Rather, Lime relies on and pleads ***only*** insupportable conclusions and "information and belief" allegations, which fail to state a DTSA claim against Hertz. (*See* Dkt. #16 at ¶ 55.)

Importantly, courts have found that the reliance "on information and belief" in a pleading "creates a further inference that plaintiff may lack knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *See, e.g., Vendavo,* 2018 WL 1456697, at *1, n.2. Thus, Lime's allegations of misappropriation, which are based heavily (if not *exclusively*) on "information and belief," fail to allege sufficient facts to state a cognizable claim. *See Citcon USA, LLC v. MaplePay Inc.*, 2021 WL 1238231, at *16 (N.D. Cal. Apr. 2, 2021), *reconsideration denied sub nom. Citcon USA, LLC v. Miao*, 2021 WL 4499267 (N.D. Cal. June 1, 2021) (allegation that "[o]n information and belief, Dino Lab and Miao, in conspiracy with the other Defendants, misappropriated Citcon's source code on which Dino Lab and Miao worked as Citcon's contractors" was "a legal conclusion with no factual basis"); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1078 (N.D. Cal. 2018) (holding that "information and belief is insufficient" and "[f]acts must be stated" to support the plaintiff's RICO claim); *PhantomALERT, Inc. v. Google Inc.*, No. 15-CV-03986-JCS, Dkt. #35 (N.D. Cal. March 8, 2016) (dismissing the plaintiff's copyright infringement claim after finding an allegation made on information and belief

10

1    was too conclusory to support a plausible inference and that "[u]nder the standard of *Iqbal* and

2    *Twombly*, more is required").

3        Specifically, for purposes of a claim of indirect misappropriation, Lime alleges that "[t]hrough

4    Cong's misappropriation, Hertz was able to unlawfully obtain (and *on information and belief* did

5    unlawfully obtain) Lime's trade secrets and other confidential and/or proprietary information." (Dkt.

6    #16 at ¶ 41 (emphasis added).) However, Lime pleads <u>no factual allegations</u> to support its conclusion

7    that Hertz *did* obtain Lime's trade secrets. Further, the SAC is wholly devoid of any allegations that

8    Hertz "knew or had reason to know" that Cong had misappropriated any information—let alone that

9    any such information was a trade secret. *See Navigation Holdings, LLC*, 445 F. Supp. 3d at 79

10   (dismissing claim of indirect misappropriation because plaintiffs' conclusory assertion that the

11   defendant "had reason to know that the confidential information and trade secrets were acquired

12   under circumstances giving rise to the duty to maintain their secrecy or limit their use" was "devoid

13   of any factual substantiation of Defendant's knowledge"). In fact, the few factual allegations pled

14   indicate a *lack* of knowledge by Hertz because, as further discussed below, Cong purportedly

15   downloaded the alleged information <u>while employed by Lime</u>—not during his employment with

16   Hertz. (Dkt. #16 at ¶ 32.)

17       Similarly, Lime's allegations of direct misappropriation lack any factual support and, instead,

18   constitute insupportable conclusions based—again—on "information and belief." Specifically, Lime

19   asserts that:

20       Separately, and independent of how Hertz obtained Lime's trade secrets, Lime also is
         informed and believes that Hertz has engaged in actual or threatened misappropriation

21       of Lime's trade secrets, including because on information and belief it possesses
         Lime's trade secrets and intends to improperly use or disclose some of those trade

22       secrets.

23   (*Id.* at ¶ 55.) Lime's word salad suffers from numerous flaws. First, despite alleging "actual *or*

24   threatened" misappropriation, Lime simply (and insufficiently) asserts a "formulaic recitation of the

25   elements" of threatened misappropriation, which does not satisfy Rule 8. *Twombly*, 550 U.S. at 555;

26   *see also Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528 (2008) ("Another variant of

27   the essential elements of a claim for threatened misappropriation consists of the following facts: (1)

28   trade secrets (2) are held by a defendant (3) who intends to improperly use or disclose some of those

171463019.4

11

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

trade secrets."). Further, Lime's allegations against Hertz cannot be based on possession of trade secrets alone—especially where allegations of possession are conclusory and lack any factual support. *Cf. Power Integrations, Inc. v. De Lara,* 2020 WL 1467406, at *19 (S.D. Cal. Mar. 26, 2020) ("[A] plaintiff must prove more than a defendant's mere possession of trade secrets."); *LigTel Commc'ns, Inc. v. Baicells Techs., Inc.,* 455 F. Supp. 3d 792, 808 (N.D. Ind. 2020) (holding that "mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets"). Finally, Lime's allegation that Hertz "intends to improperly use *or* disclose some of those trade secrets" is based only "on information and belief." (Dkt. #16 at ¶ 55.)   Information and belief is speculation and *not* facts, and "information and belief" allegations do not satisfy Rule 8. *See, e.g., Quintessential, LLC v. Quintessential Brands S.A.*, 2022 WL 357502, at *2 (N.D. Cal. Feb. 7, 2022) (dismissing trademark infringement claims based on "information and belief" because "[c]onclusory allegations like these fail to cross the plausibility threshold").

Generally, the SAC lacks any factual allegations tending to support the conclusion that Hertz actually possesses Lime's trade secrets or intends to use or disclose such trade secrets. Rather, the few factual allegations once again refute any assertion of possession, use, or disclosure of Lime's information by Hertz. Specifically, Lime repeatedly alleges that the trade secrets were used and are being used to help Hertz "modernize its tech stack" and "recruit senior Lime engineers." (Dkt. # 16 at ¶ 53.) However, Lime alleges that Hertz used LinkedIn posts in October 2022 to announce that it is "building a team" and "looking for more builders." (*Id.* at ¶ 29.) This recruitment was done well before—and, thus, without the use of—any downloaded Lime information allegedly taken by Cong in December 2022. Further, based on the alleged dates, Hertz hired Chen either before or at the same time as Cong and, again, without any of the alleged trade secret information at issue in the SAC. (*Id.* at ¶ 44.) Finally, Lime alleges that—as of February 2023—Cong and Hertz were still using LinkedIn to recruit other "software engineers who *will* modernize Hertz' tech stack." (*Id.* at ¶ 38 (emphasis added).) Together, these allegations show—if anything—that Hertz is looking beyond Lime's employees (and any alleged information they may have) in order to develop the technology necessary for its operations.

171463019.4

12

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1   More accurately stated, the SAC pleads only that Lime "is *informed and believes* that Hertz is

2   increasingly focused on modernizing its fleet management technology by leveraging innovation *of*

3   *the type* Lime has spent significant time and energy developing." (Dkt. #16 at ¶ 10 (emphasis added).)

4   This does not present an actionable legal theory. Indeed, once this Court properly ignores the

5   conclusory allegations based only "on information and belief," Lime has patently failed to allege any

6   misappropriation by Hertz of any identified trade secret and, therefore, fails to state a claim against

7   it under the DTSA. *Farm Credit Servs.*, 339 F.3d at 767 (holding that the court is "free to ignore

8   legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions

9   cast in the form of factual allegations.").

10          ### 3.   Lime's allegations of vicarious liability under the DTSA fail as Cong was not acting

11          in "the course and scope of his employment with Hertz."

12   Finally, Lime's assertion of vicarious liability fails because there are no allegations to support

13   the legal conclusion that Cong is "using and/or disclosing Lime's trade secrets within the course and

14   scope of his employment with Hertz." (Dkt. #16 at ¶ 54.) Once again, these allegations are made

15   merely "on information and belief," and Lime does not plead *any* facts tending to show that, since

16   being employed by Hertz, Cong has used, accessed, or disclosed any of Lime's trade secret

17   information. At most, Lime has alleged that Cong still possesses certain Lime property (not identified

18   as trade secrets)—and, again, possession alone is not enough to support an allegation of

19   misappropriation. *LigTel Commc'ns, Inc.,* 455 F. Supp. 3d at 808. Finally, to the extent Lime seeks

20   to rely on its allegations related to Cong's alleged downloading of files, these allegations do not

21   support liability against Hertz, as Paragraph 32 of the SAC shows they concededly occurred (if at

22   all) during the course and scope of Cong's employment with Lime—not Hertz. *See Citcon USA, LLC*,

23   2021 WL 5113049, at *8 (where it was "impossible to evaluate whether Hua was an employee of

24   Dino Lab and whether he was acting in the scope of his employment when the alleged

25   misappropriation occurred," the court could not "conclude or infer that Dino Lab was vicariously

26   liable for trade secret misappropriation."). Accordingly, Lime's assertion of vicarious liability under

27   the DTSA should also be dismissed.

28

1

**C.    LIME'S DEFICIENTLY ALLEGED COMMON LAW CLAIMS ATTEMPT TO CIRCUMVENT CALIFORNIA PUBLIC POLICY AND LAW.**

2

3    Lime's four common law interference claims against Hertz (the Fifth, Sixth, Seventh, and

4  Eighth Causes of Action in the SAC) share similar allegations—and the same flawed premise.

5  Specifically, after first pleading claims in the Complaint and FAC for alleged unlawful employee

6  solicitation against another former Lime employee based on an unlawful employee non-solicitation

7  agreement promulgated by Lime (which Lime wisely dismissed on its own in the SAC), Lime now

8  attempts to fashion these claims as a means to inhibit its former employees' mobility in contravention

9  of California public policy and CAL. BUS. & PROF. CODE § 16600. (*See* Dkt. #16 at ¶¶ 84-109.)

10  Indeed, Lime's claims of "inducing breach of written contracts" and "intentional interference with

11  contractual relations" are expressly premised on Hertz's alleged intent to "capitalize on the

12  institutional knowledge [that] Cong's team members such as Chen, Lei, and Hu possess." (*Id*. at ¶¶

13  87, 94.) Similarly, Lime's claims of "intentional and negligent interference with prospective

14  economic relations" are based on Cong and Hertz's recruiting and alleged "poaching" of Lei, Chen,

15  and Hu and, thereby, interfering with Lime's "economic relationship" with its former employees.

16  (*Id*. at ¶¶ 99, 100, 101, 104, 106, 107.) Thus, in various iterations, Lime asks this Court to find Hertz's

17  hiring of former Lime employees was unlawful.[1]

18    However, the "[California] Business and Professions Code section 16600 generally prohibits

19  covenants not to compete, and California public policy strongly favors employee mobility." *See, e.g.,*

20  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002); CAL. BUS. & PROF. CODE § 16600

21  ("[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or

22  business of any kind is to that extent void."). Indeed, despite its earlier assertion of employee non-

23  solicitation claims, Lime *now* claims that it "understands and respects that people have a right to

24

25      [1] Notably, Lime's SAC dropped a previously named defendant, Fang, but re-purposed the
26  claims previously asserted against him. (*See* Dkt. #16-1.) In relevant part, Lime previously alleged
   Fang was responsible for recruiting Lei, Chen, and Hu and—based on those allegations—asserted
27  breach of contract claims based on Fang's alleged violation of a wholly unlawful employee non-
   solicitation covenant. (*Id*. at p. 27-28.) Trying to fit a square peg into a round hole, Lime's current
28  interference claims attempt to modify its prior allegations against Fang in order to assert them against
   Cong and Hertz and avoid dismissal under clear California law.

171463019.4

14

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

choose their employer, and that companies have a right to choose their employees." (Dkt. #16 at ¶ 12.) Yet, to hold—as Lime suggests—that Hertz's hiring of Lime's former employees provides grounds for a claim for an unlawful inducement or interference with respect to those individuals' employment relationships with Lime would "create a de facto covenant not to compete" and "run counter to the strong public policy in California favoring employee mobility." *See, e.g., Whyte*, 101 Cal. App. 4th at 1463 (rejecting the inevitable disclosure doctrine as contrary to California public policy where "the inevitable disclosure doctrine in effect convert[ed] the confidentiality agreement into such a covenant not to compete" (internal citations omitted).). Accordingly, Lime's common law claims against Hertz are predicated on nothing more than its employees having left Lime to work for Hertz and are, thus, contrary to public policy; for that reason alone, the claims should be dismissed.

In addition to—or perhaps because of—Lime's failed attempt to circumvent California law, Lime fails to sufficiently plead the elements of its inducement and interference claims against Hertz. Accordingly, Lime's claims against Hertz should additionally be dismissed for this reason.

### 1. Lime fails to show Hertz's knowledge of the CIIA or allege any actionable conduct by Hertz to state a claim for inducing breach of contract or intentional interference with contractual relations.

Lime's claims of inducing breach of written contract and intentional interference with contractual relations have nearly identical pleading requirements—and both suffer from the same deficiencies. "To state a claim for inducing breach of a contract, a plaintiff must prove: (1) it had a valid and existing contract with a third party; (2) the defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by defendant's unjustified or wrongful conduct; and (5) damages were suffered as a result." *See, e.g., Little v. Amber Hotel Co.,* 202 Cal. App. 4th 280, 291 (2011), *as modified* (Jan. 17, 2012). Similarly, "[t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual

171463019.4

15

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1    relationship; and (5) resulting damage." *Power Integrations, Inc. v. De Lara*, 2020 WL 1467406, at

2    *21 (S.D. Cal. Mar. 26, 2020).

3         First, both claims require a showing of "knowledge of the contract" by the defendant. *Id.*; *Little,*

4    202 Cal. App. 4th at 291. However, there are *no allegations* in the SAC that Hertz had knowledge of

5    Cong's CIIA—the operative contract allegedly providing grounds for Lime's claims. (Dkt. #16 at ¶¶

6    85, 92); *cf. Little*, 202 Cal. App. 4th at 302 ("To be subject to liability [for inducing a breach of

7    contract], the actor must have knowledge of the contract with which he is interfering and of the fact

8    that he is interfering with the performance of the contract."). Indeed, the SAC baldly and conclusively

9    alleges that "Hertz knew Cong was subject to valid contractual obligations"—not that it had

10   knowledge of the CIIA or any other specific contract between Cong and Lime. (*Id.* at ¶ 86.)

11   Moreover, even if this vague allegation *could* establish the requisite knowledge element (which it

12   *cannot*), the speculative allegation is based *only* on *information and belief* which, as previously

13   discussed, is insufficient.

14        Similarly, Lime fails to allege any "unjustified or wrongful *conduct*" or "intentional *act*" by

15   Hertz that caused the alleged breach or disruption of the CIIA by Cong. Indeed, with respect to Hertz,

16   the only "conduct" or "acts" alleged in the SAC—that are **_not_** based on information and belief—are:

17   (1) Hertz's hiring of Cong, Chen, Lei, and Hu; (2) various LinkedIn posts and interviews; and (3) the

18   release of an updated app by Hertz. (*See id.* at ¶¶ 9, 29, 38, 39, 44.)  Notably, with respect to both

19   claims, Lime incorporates by reference only the allegations that Hertz purportedly "poached" Chen,

20   Lei, and Hu. (*See id.* at ¶¶ 84, 91.) Nonetheless, as shown above, Lime does not—and cannot—rely

21   on such acts to support its claims because they are not "unjustified or wrongful," nor are they

22   plausibly intended to induce a breach of contract. Instead, Lime asserts, on information and belief,

23   that Hertz "intended" and "desire[d]" the breach or disruption of the CIIA. (*Id.* at ¶¶ 87, 88, 94, 95.)

24   These unsupported conclusions and information and belief allegations are insufficient to support

25   Lime's claims.

26        Based on the foregoing, Lime's causes of action for inducing breach of written contract and

27   intentional interference with contractual relations against Hertz should be dismissed.

28

16

2. **Lime fails to plead an independent, wrongful act—or any actionable conduct—by Hertz to support its intentional interference with prospective economic relations claims.**

The claim of interference with prospective economic relations is not "a wrong in and of itself," and instead requires a plaintiff to "plead that the defendant engaged in an independently wrongful act." *See, e.g., Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015); *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) ("[I]nterference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself."). Indeed, as asserted above, there is nothing inherently unlawful about Hertz recruiting or hiring Lime's employees and, thereby, "interfering" with the employment relationship between Lime, Lei, Chen, and Hu.[2] *See Krypt, Inc. v. Ropaar LLC*, 2020 WL 6064423, at *2 (N.D. Cal. Oct. 14, 2020) ("At least in California, it is not improper for a company to recruit its competitor's employees.") Lime then conclusorily alleges that "[i]n recruiting the employees, Defendants engaged in independently wrongful conduct by using Lime's trade secrets and/or other confidential and/or proprietary information to recruit Lime's employees in violation of Cong's contractual obligations." (*See* Dkt. #16 at ¶ 100.) However, for all the reasons that Lime's DTSA claim fails—*i.e.*, Lime's failure to identify trade secrets or plead any factual support for its allegations of misappropriation—Lime has likewise failed to allege any independently wrongful conduct by Hertz to support its intentional interference claim.

In the only relevant, factual allegations against Hertz, Lime alleges that "[w]ithin weeks of Cong's downloading of Lime's trade secrets and confidential and/or proprietary information, Hertz poached" Chen, Lei, and Hu. (Dkt. #16 at ¶ 44.) But this allegation does not support the leap to the conclusion—based again on nothing but *information and belief*—that "Hertz and Cong used Lime's trade secrets . . . to improperly recruit Lime's engineers." (*Id.* at ¶ 46.) For example, there are no allegations that Hertz communicated with Cong prior to his employment, let alone that Hertz encouraged or was even aware that Cong allegedly downloaded trade secret information while still

---

[2] If this claim is allowed to proceed, it would mean that virtually every employee hire would somehow give rise to an "interference" claim by the former California employer for the very free employee mobility that California expressly favors. This is not the law.

employed by Lime. Similarly, there are no allegations showing that Hertz, with Cong's assistance, recruited Lime's employees, or that they used trade secret information in the process.

Accordingly, there is an absence of sufficient facts alleged under a cognizable legal theory, and Lime's intentional interference with prospective economic relations claim should be dismissed.

### 3. *Lime fails to allege a duty owed by Hertz to assert a negligent interference with prospective economic relations claim.*

Lime's negligent interference with prospective economic relations claim likewise fatally relies on deficient allegations of Hertz's alleged used of Lime's trade secrets and/or confidential and/or proprietary information. (*See* Dkt. #16 at ¶¶ 106-107.) Moreover, for purposes of a negligence-based interference claim, Lime is also required to show that Hertz owed Lime a duty of care. *See, e.g., Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1158 (S.D. Cal. 2014) (granting a motion to dismiss because "as to the negligent form of the tort, the Court has determined that Plaintiffs fail to allege that [defendants] owed them a duty of care"). In fact, "[t]he tort of negligent interference with economic relationship arises *only* when the defendant owes the plaintiff a duty of care." *See, e.g., Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994) (emphasis added).

Here, because Lime alleges Hertz is its direct competitor and direct competitors do not owe each other a duty of care under California law, Lime cannot show Hertz owed Lime a duty of care, and its negligent interference claim against Hertz fails as a matter of law. "California courts and federal courts applying California law have concluded that there is no duty of care between direct competitors unless one of them depends on the other's conduct to conduct its business." *Original Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*, 2022 WL 17224542, at *6 (C.D. Cal. Aug. 16, 2022) (dismissing the plaintiff's negligent interference claim with prejudice, finding the claim failed as a matter of law because plaintiffs and defendants were direct competitors and defendants did not owe the plaintiffs a duty of care.). Here, Lime alleges throughout the SAC that its "business operates in a competitive market" with Hertz, that Cong's job functions at Hertz are "directly competitive" to his role at Lime, and that Hertz is working on "competing technology." (Dkt. #16 at ¶¶ 37, 61, 80.) Thus, Lime, having pled that Hertz is a direct competitor, does not—and cannot—assert that Hertz owes

171463019.4

18

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Lime a duty of care. *See Stolz*, 25 Cal. App. 4th at 1825 ("The complaint did not allege such a duty, nor could it, since it was plain that plaintiff and defendants were competitors.")

Based on the foregoing, this Court should dismiss Lime's claim of negligent interference with prospective economic relations with prejudice.

### D. LIME FAILED TO PLEAD AN UNDERLYING, UNLAWFUL ACT AND, THUS, CANNOT STATE A DERIVATIVE UNFAIR COMPETITION CLAIM.

Finally, under California's Unfair Competition Law ("UCL"), unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice," with "unlawful" practices consisting of those practices that are prohibited by law, whether "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *See* CAL. BUS. & PROF. CODE §§ 17200, *et seq*.; *Smith & Hawken, Ltd. v. Gardendance, Inc.,* 2004 WL 2496163, at *5 (N.D. Cal. Nov. 5, 2004). Lime's unfair competition claim is based on the "aforementioned conduct of the Defendants"—*i.e.*, the previously asserted claims. (Dkt. #16 at ¶ 111.) However, as shown above, Lime has failed to plead a violation of law against Hertz and, thus, fails to plead any grounds for its statutory unfair competition claim against Hertz. *See, e.g., Park-Kim v. Daikin Applied Americas, Inc.,* 747 F. App'x 639, 640 (9th Cir. 2019) ("Plaintiffs cannot state a claim under the unlawful prong of the California UCL because that claim is derivative of the plaintiffs' other claims, and plaintiffs have failed to adequately plead a violation of any other law."). Accordingly, Lime's unfair competition claim against Hertz should also be dismissed.

### E. PLAINTIFF MUST SEEK LEAVE TO AMEND, BUT LEAVE SHOULD BE DENIED AS AMENDMENT WOULD BE FUTILE.

While the Ninth Circuit generally has a liberal policy with respect to granting leave to amend a pleading, a court need not grant leave when permitting a plaintiff leave to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Here, Lime's SAC is Lime's third iteration of this lawsuit and, yet, it remains riddled with deficiencies and rife with speculation couched as "information and belief" allegations because Lime has no *facts* to support its claims against Hertz.

171463019.4

19

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1   Given the unlikelihood that a Third Amended Complaint could resolve these persistent issues, Hertz

2   asks that leave to amend be denied as futile.

3   **V.      CONCLUSION**

4           Based on the foregoing, Hertz respectfully request that this Court dismiss Lime's first, fifth,

5   sixth, seventh, eighth, and ninth causes of action in the SAC with prejudice, and without granting

6   leave to amend.

7

8   DATED: April 25, 2023                    **McGuireWoods LLP**

9

10                                           By:      _/s/ Sabrina A. Beldner_
                                                      Sabrina A. Beldner, Esq.
11
                                             Attorneys for Defendant
12                                           THE HERTZ CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on April 25, 2023, I electronically transmitted the foregoing document

3   to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of

4   Electronic Filing.

5          I declare under penalty of perjury under the laws of the United States of America that the

6   foregoing is true and correct.

7          Executed on April 25, 2023, at Los Angeles, California.

8

9                              */s/ Sabrina A. Beldner*
                                  Sabrina A. Beldner
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT THE HERTZ CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)