UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUTRON HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HERTZ CORPORATION, et al., <br><br> Defendants. | Case No. 23-cv-00934-JSC <br><br> **ORDER RE: MOTION TO DISMISS AND MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. Nos. 24, 26 |

Neutron Holdings ("Lime" or "Plaintiff") brings this suit against its former employee, Kai Cong, and his new employer, Hertz. Plaintiff alleges Cong misappropriated confidential information and used that information on behalf of his new employer. Cong moves to compel arbitration and dismiss or stay the claims against him. Hertz moves to dismiss. After reviewing the briefing and having had the benefit of oral argument on June 8, 2023, the Court GRANTS Cong's motion to compel arbitration and STAYS the claims against Cong pending that arbitration. The Court GRANTS in part and DENIES in part Hertz's motion to dismiss.

**BACKGROUND**

**I.   Complaint Allegations**

Plaintiff is "the world's largest shared electric vehicle company and offers short term rentals of scooters and e-bikes" in over 30 countries and across the United States. (Dkt. No. 16 ¶ 20.)[1] To serve this market, Plaintiff invested "vast sums of money and other resources building out its infrastructure and developing proprietary software[.]" (*Id.*) Some of this software includes "trade secrets" such as "fleet management technology." (*Id.*)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    Plaintiff treats this material as confidential and takes precautions to protect its technology
2    and employee information.  (*Id.* ¶ 28.)  For example, Plaintiff makes employees sign a
3    "Confidential Information and Invention Assignment Agreement" prohibiting the use of
4    confidential information for any purpose other than the benefit of the company or the sharing of
5    such information with a third party.  (*Id.* ¶ 26.)

6    Hertz also operates in the "short-term-rental mobility industry."  (*Id.* ¶ 10.)  In December
7    2022, Hertz's CEO made comments about modernizing its technological capabilities using "third
8    party technology," rather than implementing such changes in-house.  (*Id.* ¶ 9.)  Plaintiff alleges
9    Hertz "decided to take a shortcut in its effort to 'modernize its tech stack' and 'grow in new areas
10   of the mobility sector' by raiding [Plaintiff's] key engineering talent to obtain its trade secrets and
11   other confidential and/or proprietary information."  (*Id.* ¶ 1.)  The exodus began with Plaintiff's
12   "longtime Head of Engineering," Charlie Fang.  (*Id.* ¶ 2.)  But others soon followed.

13   Defendant Kai Cong left Plaintiff for Hertz in late 2022.  Cong had worked for Plaintiff as
14   "Head of Supply Engineering."  (*Id.* ¶ 3.)  In that role, Cong managed over 60 engineers and
15   helped develop "critical IP, including its IoT [Internet of Things] and fleet platform technology."
16   (*Id.* ¶ 22.)

17   After giving notice to Plaintiff that he was leaving for Hertz, Cong "secretly and without
18   authorization" downloaded over 17,000 files onto his personal computer.  (*Id.* ¶¶ 3, 32.)  These
19   files included trade secrets and other confidential files, including Plaintiff's "proprietary two-
20   lawyer model (TLM) algorithm," "designs of [Plaintiff's] Protobuf technology used to facilitate
21   mobile app communication to back-end servers with links to Lime's source code," "a schematic of
22   [Plaintiff's] proprietary IoT platform design," product roadmaps for Plaintiff's supply engineering
23   team, including specific projects related to the IoT fleet platform, and "confidential performance
24   ratings, product roadmaps and assignments, and pay structure for [Plaintiff's] entire engineering
25   organization."  (*Id.* ¶¶ 35, 52.) Cong also has possession of Plaintiff's prototype scooter, (*id.* ¶ 34),
26   and destroyed over 2,000 documents belonging to Plaintiff before quitting, (*id.* ¶ 42).

27   Plaintiff requested Cong sign a "termination certificate for him to certify he did not have in
28   his possession and had returned all [Plaintiff's] documents and other property."  (*Id.* ¶ 33.)  Cong

2

viewed the email but did not sign the document.  (*Id.*)

After joining Hertz, Cong began working on Hertz's "pricing system, fleet management, IoT platform and EV charging infrastructure." (*Id.* ¶ 37.)  These job functions are "directly competitive" to Cong's role with Plaintiff.  (*Id.*)  Shortly thereafter, Hertz launched a new app feature that allows users to "search in popular cities for cars and browse in Hertz locations." (*Id.* ¶ 38.)  Cong also posted on LinkedIn to recruit other engineers, claiming that Hertz was planning to modernize its tech stack.  (*Id.*)

Plaintiff's Director of Engineering and two senior engineers then followed Cong to Hertz. (*Id.* ¶ 44.)  Plaintiff alleges Hertz obtained confidential information about these employees from Cong, including performance ratings, Plaintiff's pay scale, confidential products the employees were working on, and other information.  (*Id.* ¶ 45)

## II. Procedural Background

Plaintiff brings nine claims against Defendants: (1) Violation of the Defend Trade Secrets Act ("DTSA")18 U.S.C. § 1832, 1836 against Cong and Hertz; (2) Conversion against Cong; (3) California Computer Data Access and Fraud Act claims against Cong; (4) Breach of Contract against Cong; (5) Inducing Breach of Contract against Hertz; (6) Intentional Interference with Contractual Relations against Hertz; (7) Intentional Interference with Prospective Economic Relations against Cong and Hertz; (8) Negligent Interference with Prospective Economic Relations against Cong and Hertz; and (9) Unfair Competition under California's UCL. (Dkt. No. 16.)  Cong moves to compel arbitration and dismiss or stay the matter.  Hertz moves to dismiss.

## DISCUSSION

### I. Cong

The parties agree the claims against Cong must proceed via arbitration.  (Dkt. Nos. 26, 30, 34.)  They disagree, however, as to whether the Court should stay or dismiss the matter pending the completion of arbitration.  As the Ninth Circuit recently explained, district court have discretion when considering whether to stay or dismiss a matter pending arbitration under certain circumstances:

> Section three of the [Federal Arbitration Act] provides that, upon determination by a court that an issue or issues are referable to arbitration, the court, on application of a party, "shall" stay the trial of the action pending arbitration (provided the stay applicant is not in default). 9 U.S.C. § 3. On its face, Congress's use of "shall" appears to require courts to stay litigation that is subject to mandatory arbitration, at least where all issues are subject to arbitration. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding that the word "shall" in a separate section of the FAA constituted a mandate to the district court).
>
> But this court has long carved out an exception if all claims are subject to arbitration. "[N]otwithstanding the language of [section three], a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014)[.]
>
> Applying this line of cases here, we conclude that "notwithstanding the language of [section three]," the district court had discretion to dismiss Plaintiffs' suit because the parties agreed that all claims were subject to arbitration. *Johnmohammadi*, 755 F.3d at 1073–74.

*Forrest v. Spizzirri*, 62 F.4th 1201, 1204-05 (9th Cir. 2023).

Applying *Spizzirri* here, the Court STAYS the claims against Cong pending arbitration. While all claims against Cong are referrable to arbitration, all claims in the case are not. Thus, the Court exercises its discretion to stay the claims against Cong.

## II.     Hertz

The claims against Hertz fall into two general categories: a federal trade secrets claim and state law claims. The Court addresses each in turn.

### A.     Trade Secrets

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).

#### 1.     Trade Secret Identification

To prove ownership of a trade secret, plaintiffs "must identify the trade secrets and carry the burden of showing they exist." *Id.* at 658 (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). As the Ninth Circuit recently explained,

4

> "The plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'" *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998). Plaintiffs must "clearly refer to tangible trade secret material" instead of referring to a "system which potentially qualifies for trade secret protection." *Id.* at 1167 (emphasis in original). Plaintiffs may not simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at trial. *See Imax*, 152 F.3d at 1167; *X6D Ltd. v. Li-Tek Corps. Co.*, No. 10-cv-2327-GHK-PJWx, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012). It is inadequate for plaintiffs to "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information." *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *6 (internal quotations omitted); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819 (W.D. Wis. 2001) ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets.").
>
> Identifying trade secrets with sufficient particularity is important because defendants need "concrete identification" to prepare a rebuttal. *Imax*, 152 F.3d at 1167. Courts and juries also require precision because, especially where a trade secrets claim "involves a sophisticated and highly complex" system, the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract. *Id.*

*Id.* Hertz argues Plaintiff fails to identify "the bounds of its trade secrets." (Dkt. No. 32 at 13.) In particular, Hertz objects to so called "broad, non-exhaustive, and vague" descriptions of Plaintiff's protected information. (Dkt. No. 24 at 16.)

Plaintiff adequately identifies distinct categories of information it alleges are trade secrets. (Dkt. No. 16 ¶ 52.) Specifically, paragraph 52 in the SAC identifies:

> (a) proprietary Two Layer Model algorithm Lime uses to optimize its fleet management and deployment, (b) design of Lime's Protobuf technology used to facilitate mobile app communication to back-end servers and links to Lime's source code, (c) proprietary IoT design for charging cabinet and electric battery infrastructure, (d) schematic of its proprietary IoT platform design, (e) critical business and product and technical development strategy, including slides from Lime's December 2022 C-Suite business health meetings, (f) product roadmaps for Lime's supply engineering team, including specific projects related to the IoT fleet platform, pricing, and fleet deployment performance and reflecting the employee assigned and the global launch date, and (g) confidential performance ratings, product roadmaps and assignments, and pay structure for Lime's entire engineering organization.

(*Id.*) Each identified subject is particularized to Lime and provides enough detail to go beyond

"catchall phrases." *InteliClear*, 978 F.3d at 658.  For example, Plaintiff does not just describe "an algorithm."  Rather, Plaintiff explains it was a "proprietary Two Layer Model algorithm" that Plaintiff uses "to optimize fleet management and deployment."  (Dkt. No. 16 ¶ 52.)  The SAC also explains how Plaintiff uses that algorithm within Plaintiff's tech ecosystem.  (*Id.* ¶ 35.)  Such description is sufficient at this stage.  *See Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (describing particularity requirement).

Hertz also objects Plaintiff used "non-exhaustive wording" when defining trade secrets, such as the phrase "including, but not limited to…" (Dkt. No. 32 at 13.)  But such open-ended wording does not doom a trade secret claim when other allegations plausibly define at least one trade secret.  *InteliClear* is on point.  There, when considering an early summary judgment motion, the Ninth Circuit stated: "At this stage, particularly where no discovery whatsoever had occurred, it is not fatal to InteliClear's claim that its hedging language left open the possibility of expanding its identifications later. InteliClear's burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." *InteliClear*, 978 F.3d at 659.  Hertz attempts to distinguish *InteliClear* because "*InteliClear* was analyzing a motion for summary judgment— not a motion to dismiss[.]"  But, Hertz does not explain why under these circumstances, that distinction makes a difference in the outcome.  As in *InteliClear*, Plaintiff identifies—with particularity—the information at issue. (Dkt. No. 16 ¶ 52.)  Those allegations plausibly meet DTSA's particularity requirement.  That Plaintiff recognizes discovery may uncover other trade secret misappropriation does not undermine the sufficiency of the SAC allegations.

### 2. Misappropriation

DTSA defines misappropriation as: "(a) the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" (b) the disclosure of a trade secret without the owner's consent; or (c) the use of a trade secret without the owner's consent." *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (quoting 18 U.S.C. §§ 1839(5)(A)-(B)).

Whether an employer is vicariously liable for an employee's misappropriation turns on whether the employee's trade secret misappropriation "was committed within the scope of

1  employment." *Brain Injury Ass'n of California v. Yari*, No. 19-CV-5912, 2020 WL 3643482, at *6
2  (C.D. Cal. Apr. 30, 2020). As relevant here, misappropriation is "within the scope of employment
3  when it is performed, at least in part, to benefit the employer, though the employer may forbid it."
4  *Id.* at *5 (quoting *SolarCity Corp. v. Pure Solar Co.*, No. 16-CV-01814, 2016 WL 11019989, at
5  *5 (C.D. Cal. Dec. 27, 2016)); *see also Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644-
6  LHK, 2020 WL 5074307, at *3 (N.D. Cal. Aug. 25, 2020) (collecting cases).

Plaintiff alleges Hertz is vicariously liable for Cong's *use* of the protected information *after* beginning his employment with Hertz. Plaintiff's inferential chain goes as follows: Cong took the relevant information, Cong went to work for Hertz, *and* Cong used that information as a Hertz employee to (1) help Hertz update its application's search feature and (2) poach Plaintiff's other engineers. (Dkt. No. 16 ¶¶ 37-39, 53.)

Drawing all reasonable inferences in Plaintiff's favor, Plaintiff's factual allegations raise a plausible inference Hertz is vicariously liable for the misconduct alleged. As to the search feature, a plausible inference exists that Cong used the secrets to inform Hertz's product design. Plaintiff alleges Cong worked on "fleet management" for Plaintiff and took an identical role at Hertz. (*Id.* ¶ 37.) Then, shortly after syncing Plaintiff's fleet management documents to his local computer, (*id.* ¶ 35), Cong joined Hertz and Hertz released a mobile application update with a "search" function. (*Id.* ¶ 37.) Cong allegedly took algorithms related to mobile technology that "help [Plaintiff] determine the best place to deploy its vehicles across the country and the world." (*Id.* ¶ 35.) Hertz's search function allows customers to find Hertz's cars at different locations. (*Id.* ¶ 38.) Drawing all reasonable inferences in Plaintiff's favor, it is plausible Hertz's app leverages Plaintiff's technology because both technologies relate to how the parties position their respective fleets. Similarly, a plausible inference supports Cong's use of Plaintiff's employee data to recruit other engineers shortly after Cong left Plaintiff for Hertz. (*Id.* ¶ 44.) That Cong downloaded employee salary and performance information shortly before some of Plaintiff's employees left to join Hertz suggests Hertz plausibly used that information during the recruitment.

Hertz's contrary arguments are not persuasive at this stage. First, Hertz argues Cong was Plaintiff's employee when he downloaded the relevant documents so vicarious liability cannot

7

1  attach. (Dkt. No. 32 at 14.)  But, as described above, Cong allegedly used the information while at

2  Hertz.  So, because Plaintiff alleges subsequent use of the misappropriated data, the timing of the

3  initial download is not dispositive.

4        Hertz's alternative arguments require inferences in Hertz's favor.  For example, Hertz

5  contends Plaintiff's app-development timeline is "logically impossible" because Hertz could not

6  have launched a new app so quickly after Cong joined. (Dkt. No. 32 at 14.)   But that argument

7  requires an improper inference in Hertz's favor.  At this stage, it is plausible that Hertz began

8  developing new technology before Cong joined but finished that development (using Plaintiff's

9  technology) after Cong joined.  Indeed, Plaintiff's allegations suggest as much.  (*See* Dkt. No. 16

10 ¶ 2 (implying Hertz began modernizing its technology as of October 2022).[2]  Hertz also

11 suggests—in its reply brief—that Plaintiff's employee recruitment timeline is implausible.  For

12 example, the SAC alleges Xiuming Chen left Plaintiff for Hertz on December 30, 2022, while

13 Cong still worked for Plaintiff.   But even setting Chen aside, the SAC alleges two other engineers

14 (Lei and Hu) left Plaintiff for Hertz "weeks after" Cong took the salary and performance

15 information.  (*Id.* ¶ 44.)  Hertz objects this timeline is deceiving because departures "weeks after"

16 Cong's alleged download *could* have been while Cong still worked for Plaintiff.  But this

17 argument again requires an inference in Hertz's favor.  Such an inference would be improper at

18 this stage.  So, drawing reasonable inferences in Plaintiff's favor—as this Court must—Plaintiff's

19 factual allegations plausibly state a DTSA claim.

20                 \* \* \*

21       Plaintiff states a claim under DTSA.  The SAC plausibly alleges Plaintiff owns trade

22 secrets.  The factual allegations support a plausible inference as to Hertz's vicarious liability for

---

[2] Hertz requests the Court take judicial notice of the App Store website for the Hertz App. According to Hertz, the webpage indicates the app-update in question occurred in December 2022, *before* Cong joined Hertz.  Such evidence is not amendable to judicial notice.  "The purpose of the judicial notice rules is to allow the court or jury to consider a matter as to which there can be no reasonable dispute." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). When an app update occurred and what that update entailed is subject to reasonable dispute. Moreover, Hertz improperly introduced this evidence in its reply brief, not in its initial motion to dismiss. Thus, the Court declines to consider such evidence at this stage.

Cong's misappropriation.[3]  And it is uncontested whether Plaintiff alleged damages stemming from that misappropriation.  Thus, Hertz's motion to dismiss the DTSA claim is DENIED.

### B.     State Law Claims

#### 1.     Inducing Breach of Contract & Intentional Interference with Contractual Relations

Plaintiff alleges Hertz is liable for (1) inducing Cong's contractual breach and (2) interfering with Cong's contractual confidentiality obligations.  Each cause of action requires an allegation Hertz had some knowledge of Cong's contractual obligations.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 291, 136 Cal. Rptr. 3d 97, 108 (2011), *as modified* (Jan. 17, 2012).  Plaintiff does not provide any factual allegations to support its conclusion that Hertz had knowledge of Cong's contractual relationship with Plaintiff.  The SAC states, "Hertz knew Cong was subject to valid contractual obligations prohibiting him from using Lime's Confidential Information." (Dkt. No. 16 ¶¶ 86, 93.)  But no facts support this statement.  Thus, Plaintiff fails to state a claim for these contractual actions.

Plaintiff's counterarguments are unpersuasive.  Because Hertz is an employer and "is well aware that employees are routinely subject to non-disclosure obligations," Plaintiff contends it is plausible that Hertz knew about this contract. (Dkt. No. 29 at 26.)  Plaintiff is correct that "a cause of action for intentional interference with contractual relations" is properly pled when "it is possible to infer from the facts alleged that the defendant knew of plaintiff's contractual relationships."  (Dkt. No. 29 at 26 (quoting *Solyndra Residual Tr. by & through Neilson v. Suntech Power Holdings Co.*, 62 F. Supp. 3d 1027, 1048 (N.D. Cal. 2014)).  But Plaintiff's cited authority, *Solyndra*, shows why the allegations here fall short.  There, the plaintiff alleged defendants told plaintiff's distributors: "if [distributors] continued to honor their purchase commitments with [p]laintiff, [the distributors] would be undersold by their competitors." *Id.*  Given this threat, it was reasonable to infer the defendant knew of the contracts at issue. *Id.* at 1037, 1048.  Here, no such

---

[3] Plaintiff also claims Defendants are liable under an "indirect misappropriation" theory. A claim of indirect misappropriation requires factual substantiation of Hertz's knowledge of direct misappropriation. *Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644-LHK, 2020 WL 5074307, at *2 (N.D. Cal. Aug. 25, 2020).  Because Plaintiff's claim survives under the vicarious liability theory, the Court need not address the indirect misappropriation theory at this stage.

facts are alleged.  Plaintiff cites no other authority to support its broad inference: that employers presumptively have knowledge of prospective employees' contractual confidentiality obligations.  Absent further factual allegations regarding Hertz's knowledge, these contractual allegations fail to state a claim.  These claims are DISMISSED with leave to amend.

### 2. Intentional Interference with Prospective Economic Relations

"A plaintiff asserting this tort must show that the defendant knowingly interfered with an 'economic relationship between the plaintiff and some third party, [which carries] the probability of future economic benefit to the plaintiff.'" *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)). The plaintiff "must plead as an element of the claim that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Ixchel*, 9 Cal. 5th at 1142.  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* (cleaned up).  Hertz moves to dismiss this claim because Plaintiff "fails to plead an independent, wrongful act." (Dkt. No. 24 at 25.)

The Court disagrees.  Because Plaintiff plausibly alleges a DTSA violation occurred during the recruiting of (at least) Lei and Hu, that trade secret misappropriation is "independently wrongful" from the fact of the interference itself. *Ixchel*, 9 Cal. 5th at 1142.  Hertz warns that "if this claim is allowed to proceed, it would mean that virtually every employee hire would somehow give rise to an 'interference claim[.]'" (Dkt. No. 24 at 25.)  But the facts here limit Hertz's slippery slope argument.  In other words, the SAC does not merely allege Hertz recruited Plaintiff's employees.  Rather, the SAC plausibly alleges Hertz used misappropriated data—including confidential human resource data—to do so.  That factual "sticky step" limits the slippery slope argument's force here.

### 3. Negligent Interference with Prospective Economic Relations

Hertz moves to dismiss Plaintiff's negligent interference claim because Plaintiff alleges Hertz is its competitor. (*See* Dkt. No. 16 ¶ 10.)  Negligent interference with an economic relationship arises only when the defendant owes the plaintiff a duty of care. *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994).  No duty of care exists among

10

competitors. *Id.* Plaintiff responds that Cong owed Plaintiff a duty of care—based on his contractual promise to keep such information confidential. And Plaintiff alleges Cong breached that duty when he used the misappropriated information to recruit Plaintiff's workers.[4] (*See*, *e.g.*, Dkt. No. 16 ¶ 108.) Plaintiff argues Hertz is vicariously liable for Cong's negligence. Because Plaintiff's DTSA claim proceeds on the vicarious liability theory, this claim too survives based on the same allegations.

### 4. Unfair Competition

Plaintiff's Unfair Competition claim is entirely derivative of the underlying DTSA and state law claims. Defendant moves to dismiss this claim only on grounds the Court should dismiss the complaint in its entirety. Because some Plaintiff's claims survive, Plaintiff's Unfair Competition claim also survives.

## CONCLUSION

In sum, Hertz's motion to dismiss is GRANTED in part and DENIED in part. The motion is DENIED as to the DTSA claim, the Intentional and Negligent Interference with Prospective Economic Relations claims, and the Unfair Competition claim. The motion to dismiss is GRANTED with 20-days leave to amend as to Plaintiff's Inducing Breach of Contract and Intentional Interference with Contractual Relations claims. Cong's motion to stay the claims against him pending arbitration is GRANTED.

**IT IS SO ORDERED.**

This Order resolves Dkt. Nos. 24, 26

Dated: June 8, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

---

[4] Plaintiff also argues recent caselaw "casts doubt" on the duty of care requirement. (Dkt. No. 29 at 28.) But, as Plaintiff recognized at oral argument, binding authority holds competitors owe one another no duty of care.